Dear Director Thomas Kemper,
¶ 0 This office has received your request for an official opinion of the Attorney General in which you asked, in effect:
Does the Oklahoma Commission on Children and Youth haveauthority to have access to education records in order to monitorschool districts regarding the provision of special educationservices for children with disabilities?
¶ 1 Chapter 26 of Title 10 of the Oklahoma Statutes provides legislative enactment for the provision of services to children and youth through sundry public and private agencies in this state. The Commission on Children and Youth (the "Commission") is a statutorily created agency. See 10 O.S. 601.1 (1998). Among the duties of the Commission is the duty to:
 Review the programs, policies and services for children and youth provided by public and private agencies for compliance with established state policies and progress towards goals identified in planning documents relating to children and youth services and to make reports regarding said compliance and progress.
10 O.S. 601.4 (1998).
¶ 2 In addition, the Oklahoma Legislature created the Interagency Coordinating Council for Special Services to Children and Youth, which includes the Commission as a member, to develop and implement a comprehensive and coordinated system for the delivery of special education services to children in need of such special services under the formerly named Education of All Handicapped Children Act of 1975, now known as Individuals with Disabilities Education Act ("I.D.E.A."). See 10 O.S. 601.41
(1998). Under this state act, known as the Act for Coordination of Special Services to Children and Youth, the entities designated are required to develop a State Plan by which to ensure full and cost effective compliance with state and federal requirements for the education of special needs children. See10 O.S. 601.46 (1998). This includes, inter alia, mechanisms by which to monitor the proper delivery of services. See id.10 O.S. 601.46(A)(5). Entities under the Act are required, as necessary, to enter into interagency agreements "for the purpose of implementing the State Plan and the provisions of the Act for Coordination of Special Services to Children and Youth[.]" Id.10 O.S. 601.46(B).
¶ 3 The need for proper monitoring of the provision of education services stems from the State's intent to obtain federal education funds. In order for the State to obtain these funds, in part, the State must stay in substantial compliance with provisions of the I.D.E.A. Thereunder, states which desire to receive federal education funds must ensure that a free and appropriate public education is provided to qualified children with disabilities and that due process is accorded in the education of these children. See 20 U.S.C. 1400-1489 (1991 and Supp. 1998). The state education authority, in Oklahoma the Department of Education, has primary responsibility to monitor compliance by the school districts. The State is required to designate the Department of Education as the primary authority to ensure compliance with the provisions of I.D.E.A., but there is nothing which prevents the State from designating another agency to provide a specific form of review of the education process. To this end, as discussed above, the Legislature has enacted a broad mandate for many entities involved in the education process to develop the State Plan and provide an additional tier of monitoring.
¶ 4 Nevertheless, federal law mandates a general scheme of confidentiality for educational records under the Family Educational Rights and Privacy Act. See 20 U.S.C.A. 1232g (1991 and Supp. 1998). Again, this mandate is enforced by tying it to the state's ability to receive federal education money. The failure of a state to maintain necessary confidentiality can make it ineligible for federal money.
¶ 5 The prohibition on disclosure, while broad, is not absolute. The Act provides disclosure along specified lines:
(b) . . . . . .
 (1) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, . . .) of students without the written consent of their parents to any individual, agency, or organization, other than the following
 (A) other school officials, including teachers within the educational institution or local educational agency, who have been determined by such agency or institution to have legitimate educational interests, including the educational interests of the child for whom consent would otherwise be required;
 (B) officials of other schools or school systems in which the student seeks or intends to enroll, upon condition that the student's parents be notified of the transfer, receive a copy of the record if desired, and have an opportunity for a hearing to challenge the content of the record;
 (C) authorized representatives of (I) the Comptroller General of the United States, (II) the United States Secretary [of Education], or (III) State educational authorities, under the conditions set forth in paragraph (3),
 (D) in connection with a student's application for, or receipt of, financial aid;
 (E) State and local officials or authorities to whom such information is specifically allowed to be reported or disclosed pursuant to State statute adopted
 (i) before November 19, 1974, if the allowed reporting or disclosure concerns the juvenile justice system and such system's ability to effectively serve the student whose records are released, or
(ii) after November 19, 1974, if —
 (I) the allowed reporting or disclosure concerns the juvenile justice system and such system's ability to effectively serve, prior to adjudication, the student whose records are released; and
 (II) the officials and authorities to whom such information is disclosed certify in writing to the educational agency or institution that the information will not be disclosed to any other party except as provided under State law without the prior written consent of the parent of the student.
 (F) organizations conducting studies for, or on behalf of, educational agencies or institutions for the purpose of developing, validating, or administering predictive tests, administering student aid programs, and improving instruction, if such studies are conducted in such a manner as will not permit the personal identification of students and their parents by persons other than representatives of such organizations and such information will be destroyed when no longer needed for the purpose for which it is conducted;
 (G) accrediting organizations in order to carry out their accrediting functions;
 (H) parents of a dependent student of such parents, . . .;
 (I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons; and
 (J) (i) the entity or persons designated in a Federal grand jury subpoena, in which case the court shall order, for good cause shown, the educational agency or institution (and any officer, director, employee, agent, or attorney for such agency or institution) on which the subpoena is served, to not disclose to any person the existence or contents of the subpoena or any information furnished to the grand jury in response to the subpoena; and
 (ii) the entity or persons designated in any other subpoena issued for a law enforcement purpose, in which case the court or other issuing agency may order, for good cause shown, the educational agency or institution (and any officer, director, employee, agent, or attorney for such agency or institution) on which the subpoena is served, to not disclose to any person the existence or contents of the subpoena or any information furnished in response to the subpoena."
20 U.S.C.A. 1232g.
¶ 6 In recognition of this federal mandate of confidentiality of educational records,[1] the Legislature has further required specified entities, including the Commission, to create on a cooperative basis, rules and guidelines for the release and transfer of confidential information regarding children and youth. See 10 O.S. 620.1-10 O.S. 620.6 (1998). This includes confidential education records maintained by schools.See 10 O.S. 620.5 (1998). It is specifically provided that the release of confidential information shall occur only pursuant to informed parental consent, court order, or as provided by law.See 10 O.S. 620.1(C) (1998).
¶ 7 It is self-evident from the provisions of these statutes that the Legislature has intended to establish a broad-based system of monitoring to ensure compliance with federal laws in the provision of special services to children in the education arena and elsewhere, although the acts in no way relieve individual agencies of the duty to provide services as mandated by law. See 10 O.S. 601.43 (1998). In order for the Commission to obtain such confidential information, it must, in cooperation with other identified entities in these acts, promulgate rules regarding these matters and develop and enter into interagency agreements to carry out these functions. See10 O.S. 620.3 and 10 O.S. 620.6.
 ¶ 8 It is, therefore, the official opinion of the AttorneyGeneral that:
 The Oklahoma Commission on Children and Youth, as part of theInteragency Coordinating Council of Special Services to Childrenand Youth, may have authority to have access to education recordsto monitor school districts regarding the provision of specialeducation services for children with disabilities, provided it isdone pursuant to promulgated rules and interagency agreements asrequired in 10 O.S. 620.3 and 10 O.S. 620.6 (1998).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL
[1] Pursuant to the Family Educational Rights and Privacy Act.20 U.S.C.A. 1232g.